STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| Village of Essex Junction,<br>　　　Plaintiff, | } } } } | |
| v. | } } | Docket No. 107-7-99 Vtec |
| Hauke Building Supply, Inc.,<br>　　　Defendant. | } } } } | |

|  |  |  |
|---|---|---|
| In re: Appeals of<br>　Brooks Pharmacy | } } } } } | Docket Nos. 119-7-99 Vtec, 120-7-99 Vtec,<br>　and 176-9-99 Vtec |

<u>Decision and Order on Motion for Summary Judgment</u>

These four consolidated cases all involve the size of the signs on the Brooks Pharmacy facade in the shopping center owned by Hauke Building Supply, Inc. at 77 Pearl Street in the Village of Essex Junction.  In Docket No. 107-7-99 Vtec, the Village took enforcement action against the property owner, asserting both that the "Brooks" facade sign was too large, and that the additional signs in the windows also violate the sign ordinance.  In Docket No. 119-7-99 Vtec,  Brooks Pharmacy appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Village of Essex Junction, upholding the Notice of Violation which formed the basis of that enforcement action.  In Docket No. 120-7-99 Vtec, Brooks Pharmacy appealed from the ZBA's denial of a variance for the sign as installed.  In Docket No. 176-9-99 Vtec,  Appellants appealed from a decision of the ZBA upholding the Zoning Administrator's denial of a permit for an alternative sign.  Defendant Hauke Building Supply, Inc. and Appellant Brooks Pharmacy are represented by Daniel P. O'Rourke,  Esq.; the Village is represented by David A. Barra, Esq.  Defendant-Appellants have moved for summary judgment.  The undisputed facts referred to in this decision are found in the parties' stipulation or in the agreed exhibits.

1

On October 23, 1998, "Brooks Drug" as Applicant and "Hauke Building Supply" as Owner of Record, applied for a sign for the facade of the Brooks portion of the shopping center. The length of the facade attributable to Brooks Pharmacy equals 88 feet, of which 44 feet is attributable to the central portico portion of the building where the "Brooks" sign is located, and 44 feet is attributable to the end portion of the building where the "Pharmacy" sign is located. The height of the apparent eave line in front is 10 feet, although a green metal facade is raised above that line on the side portion of the building to a vertical height of 21 feet, 11 inches. The central portico portion of the building has a peaked roof extending approximately 14 feet deep from the front of the facade. Measured by scale from the plan attached to Exhibit A, the peak of that roof is 32 feet above the finished grade, and the eaves of that roof are approximately 21 feet above the finished grade.

The application shows the facade area calculation in the permit application filled in with the number "88" for the facade length, the number "10" for the "height of wall to the eave," and the number "880" filled in for the facade area, and the calculation of the maximum size of wall sign allowed filled in as "44" square feet. The parties have not presented as either an agreed or a disputed fact the identity of the person who filled in these numbers on the application, and in particular whether it was a representative of either Brooks Pharmacy or Hauke Building Supply. The application form does not mention the term "parapet"; neither is that term defined in the zoning or sign regulations. The term "peak" is not used in the calculation of facade area; the regulations do not appear to have contemplated that the gable end of a building could face the street and hence require a facade area calculation.

The portion of the application showing the width and length of the proposed sign was not filled in, but a drawing to scale was provided with the application showing two alternatives for the facade of the building, plus a side elevation. The first alternative showed "Brooks Pharmacy" in a unified sign on the central portico segment of the building and a "Convenience Foods" sign on the side portion of the building. The second alternative showed a larger "Brooks" sign on the central portico segment of the building and a "Pharmacy" sign on the side portion of the building. We may assume that it was the

2

second alternative, showing two widely separated signs: a "Brooks" sign and a "Pharmacy" sign, which was installed and is at issue in this litigation, but the parties have not presented this as an agreed fact. The "Brooks" sign as installed has an area of approximately 130 square feet. The "Pharmacy" sign as installed has an area of approximately 30 square feet.

Two copies of the second page of the application were provided as part of agreed Exhibit A. On one copy, a signature shows on each signature line, one for the applicant, dated "9/19/98," and one for the landowner, dated "10/13/98." No evidence was presented as to whose signatures so appear, although the landowner's signature appears to be "David G. Hauke," and the first name on the applicant's line appears to be "Keith." The copy signed by both applicant and landowner does not have the "staff action" section filled in. On the other copy of the second page of the application, the applicant's signature line is blank, the landowner's signature line appears to be identical to the other copy, and the "staff action" section is filled in as "approved" on 10/23/98. It is this copy which contains the additional handwritten information, in what appears to be a different handwriting and pen line thickness than the remainder of the application: "Brooks sign is 44" and "Pharmacy sign is 30." This copy also shows, in handwriting, a check mark next to the number "44" for the calculated maximum size of wall sign allowed, and, directly below that number, the underlined number "30" next to which is written the word "Pharmacy."

Under §714(D)(2), only one wall sign per business establishment is allowed. If both segments of the building were to be combined for the calculation of the sign area, then it appears from §714(C)(2) that the area between the "Brooks" sign and the "Pharmacy" sign must be included in the area computation. No evidence was presented as to why or how the two calculations were made separately for the two signs in the Permit. If the two segments of the building are treated separately, then the facade area must be calculated separately for each sign.

If the term "parapet" is defined as something such as a wall raised above the roof line at the edge of a roof, and if the term "eave" is defined as something such as the line at which a roof meets a wall, then it appears that the calculation for the available sign area should be made using a length of 44 feet for each segment of the building, an eave height

3

of 21 feet[1] for the central portico segment, and a parapet height of 21 feet, 11 inches (21.917 feet) for the side segment. Using those numbers, the available sign area for the central portico segment would be five percent of 924 square feet, or a total of 46.2 square feet. The available sign area for the side segment would be five percent of 964.35 square feet, or a total of 48.2 square feet. However, the Court cannot reach that conclusion on the present motions for summary judgment, as necessary material facts are in dispute.

Material facts are in dispute which are necessary to determine each of the four cases. The size and duration of the signs in the windows has not been established, necessary to show a violation of the temporary sign requirement of §714(A)(1)(c). No evidence has been presented to establish the definition or usage of the term "parapet" or the term "eave" in the field of architecture or shopping center development or building regulation. Without such evidence, it is not possible finally to determine how to calculate the facade area under the regulations, either to determine if the sign which was the subject of the enforcement action violates the ordinance, or to determine whether the more recent application should be approved or modified.

Further, no evidence has been presented as to who filled in or signed the application, without which it is not possible to determine whether or which of the parties should be bound by the assertions in the application (which is a separate question from whether they should be bound by the permit as issued). While the applicant is bound by the permit as issued, as it was not appealed, the Court cannot determine which document is the permit as issued. That is, without evidence as to who wrote "Brooks sign is 44" and "Pharmacy sign is 30" on the second page of the permit, without evidence as to whether it is apparent that either or both of those numbers refers to the square footage of the respective signs, and without evidence as to whether a copy of the permit with that writing was ever posted or provided either to Brooks Pharmacy or to Hauke Building Supply, the

---

[1]Nothing in the regulations supports using the peak height to calculate the facade area for the central portico segment, much less for the overall building, unless the term "parapet" is used to mean "roof peak" as a term of art in this field.

4

Court cannot determine whether they should be bound by that added writing on the permit. Further, no agreed facts or affidavits were submitted addressing the criteria relevant to determining whether a variance should be issued.

Accordingly, based on the foregoing, Defendant-Appellants' Motion for Summary Judgment is DENIED. This matter will be set for a hearing on the merits of the remaining facts, unless the parties prefer to supplement their motions for summary judgment, or to enter into discussions towards resolving this dispute along the lines suggested by this decision. The parties shall confer and state to the Court in writing on or before May 18, 2000 whether they agree on how they wish to proceed. If they wish a hearing, they should state their estimates of the amount of time necessary, and any unavailable dates in June, July or August. If they do not agree on how they wish to proceed, we will hold a conference in person at the Costello Courthouse in Burlington on Thursday, May 25 at 12:45 p.m. to discuss any unresolved procedural issues.

Done at Barre, Vermont, this 8th day of May, 2000.

_____
                  Merideth Wright
                  Environmental Judge